MANATT, PHELPS & PHILLIPS, LLP
BARRY S. LANDSBERG (Bar No. CA 117284)
E-mail: blandsberg@manatt.com
HARVEY L. ROCHMAN (Bar No. CA 162751)
E-mail: hrochman@manatt.com
ANDREW L. SATENBERG (Bar No. CA 174840)
E-mail: asatenberg@manatt.com
JOANNA S. MCCALLUM (Bar No. CA 187093)
E-mail: jmccallum@manatt.com
REID P. DAVIS (Bar No. CA 275164)
E-mail: redavis@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
BARRY W. LEE (Bar No. CA 088685)
E-mail: bwlee@manatt.com
CHRISTOPHER A. RHEINHEIMER (Bar No. CA 253890)
E-mail: crheinheimer@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

Attorneys for Defendant
DIGNITY HEALTH dba CHANDLER REGIONAL MEDICAL CENTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEF ROBINSON,<br><br>Plaintiff,<br><br>vs.<br><br>DIGNITY HEALTH d/b/a CHANDLER REGIONAL MEDICAL CENTER,<br><br>Defendant. | No. 16-cv-03035-YGR<br><br>**DEFENDANT'S RESPONSE TO AMICUS CURIAE BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**<br><br>Date: September 27, 2016<br>Time: 2:00 p.m.<br>Location: Oakland Courthouse, Courtroom 1, Fourth Floor<br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed: June 6, 2016<br>Trial Date: None Set |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

RESPONSE TO EEOC'S MOTION FOR LEAVE
TO FILE AMICUS BRIEF

**TABLE OF CONTENTS**

**Page**

I. THE EEOC'S CURRENT INTERPRETATION CONFLICTS WITH ITS OWN RECENTLY ABANDONED INTERPRETATION ............................................................. 1

II. THE EEOC OMITS MENTION OF THE RECENT RULINGS REJECTING ITS VIEW .................................................................................................................................... 4

III. THE EEOC OMITS MENTION OF RECENT DEVELOPMENTS IN TRANSGENDER DISCRIMINATION CASES ................................................................. 6

IV. THE EEOC'S VIEW IS UNSUPPORTED BY LAW ........................................................ 8

V. THE EEOC'S POLICY ARGUMENTS ARE FOR CONGRESS, NOT COURTS ........ 10

VI. THE EEOC FAILS TO MEANINGFULLY ADDRESS CHANDLER'S NEUTRAL POLICY ........................................................................................................... 11

VII. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

### CASES

*Campbell v. Espy*,
  1994 WL 652840 (EEOC July 21, 1994) ............................................................................... 2

*Carcano v. McCrory*,
  2016 WL _____ (M.D.N.C. Aug. 26, 2016) ..................................................................... 7, 8

*Christiansen v. Omnicom Group, Inc.*,
  __ F. Supp. 3d __, 2016 WL 951581 (S.D.N.Y. March 9, 2016) .......................................... 11

*EEOC v. RG & GR Harris Funeral Homes, Inc.*,
  __ F. Supp.3d__, 2016 WL 4396083 (E.D. Mich. Aug. 18, 2016) .......................... 4, 5, 6, 11

*EEOC v. RG & GR Harris Funeral Homes, Inc.*,
  100 F. Supp. 3d 594 (E.D. Mich. 2015) ............................................................................. 4, 5

*Etsitty v. Utah Transit Authority*,
  502 F.3d 1215 (10th Cir. 2007) ............................................................................................. 6

*Fowlkes v. Ironworkers Local 40*,
  790 F.3d 378 (2d Cir. 2015) ............................................................................................. 2, 3

*G.G. ex rel. Grimm v. Gloucester County School Board*,
  822 F.3d 709 (4th Cir. 2016) ........................................................................................ 6, 7, 8

*General Dynamics Land Systems, Inc. v. Cline*,
  540 U.S. 581 (2004) ............................................................................................................. 3

*Glenn v. Brumby*,
  663 F.3d 1312 (11th Cir. 2011) ............................................................................................. 9

*Gloucester County School Board v. Grimm*,
  136 S.Ct. 2442 (Aug. 3, 2016) .............................................................................................. 7

*Hively v. Ivy Tech Comm. College*,
  __ F.3d __, 2016 WL 4039703 (7th Cir. July 28, 2016) ..................................................... 11

*In re Union Pacific Railroad Employment Practices Litig.*,
  479 F.3d 936 (8th Cir. 2007) ................................................................................................ 3

*Johnston v. University of Pittsburgh*,
  97 F.Supp.3d 657 (W.D. Pa. 205) ......................................................................................... 6

*Kastl v. Maricopa County Comm. College Dist.*,
  325 Fed. Appx. 492 (9th Cir. 2009) ...................................................................................... 5

*Kowalczyk v. Brown*,
  1994 WL 744529 (EEOC Dec. 27, 1994) ............................................................................. 2

*Latta v. Otter*,
  771 F.3d 456 (9th Cir. 2014) ................................................................................................. 5

ii   RESPONSE TO EEOC'S MOTION FOR LEAVE
TO FILE AMICUS BRIEF

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES
(continued)

Page

*Macy v. Holder*,
    2012 WL 1435995 (EEOC April 20, 2012) ................................................................... 1, 2

*Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont.*,
    694 F.2d 203 (9th Cir. 1982) ............................................................................................. 8

*Nichols v. Azteca Restaurant Enterprises, Inc.*,
    256 F.3d 864 (9th Cir. 2001) ............................................................................................. 5

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998) .......................................................................................................... 10

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) .................................................................................................. *passim*

*Schwenk v. Hartford*,
    204 F.3d 1187 (9th Cir. 2000) ....................................................................................... 5, 9

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ...................................................................................................... 3, 10

*Smith v. City of Salem, Ohio*,
    378 F.3d 566 (6th Cir. 2004) .......................................................................................... 5, 9

*Texas v. United States*,
    __ F.Supp.3d__, 2016 WL 4426495 (N.D. Tex. Aug. 21, 2016) ................................... 7, 8

*University of Texas Southwestern Medical Center v. Nassar*,
    133 S. Ct. 2517 (2013) .................................................................................................. 3, 10

*Wood v. City of San Diego*,
    678 F.3d 1075 (9th Cir. 2012) ......................................................................................... 11

**REGULATIONS**

34 C.F.R. § 106.33 ..................................................................................................................... 7

Defendant Dignity Health dba Chandler Regional Medical Center (Chandler) hereby responds to the proposed amicus curiae brief submitted by the Equal Employment Opportunity Commission (EEOC) in support of Josef Robinson's claim for violation of Title VII.[1]  As explained, the EEOC's adamant expression of its position on transgender discrimination under Title VII is unsupported by authority and provides no support for Robinson's claim.  Indeed, the EEOC's own recent reversal of position on transgender status as a protected category under Title VII underlines why such profound changes in the law must come from Congress, not from fleeting policy pronouncements by an executive agency or government lawyers.

I.     **THE EEOC'S CURRENT INTERPRETATION CONFLICTS WITH ITS OWN RECENTLY ABANDONED INTERPRETATION**

The EEOC's brief unconditionally espouses the theory that Title VII clearly and unambiguously precludes discrimination on the basis of transgender status.  The EEOC contends that under *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), any discrimination against a transgender person is prohibited, whether based on sex stereotyping, gender identity, or transgender status, because by their very nature transgender persons violate sex stereotypes.  *See* EEOC Br. at 6:11-13 ("because a transgender individual does not conform to [gender-based] expectations or norms, discrimination against a transgender individual because he or she is transgender is, by definition, discrimination 'based on . . . sex,' within the meaning of Title VII") (citing *Macy v. Holder*, 2012 WL 1435995, at *11 (EEOC April 20, 2012)).  The EEOC would have the reader believe that there is no other legally supportable view and that any employer, such as Chandler, that takes the position that Title VII protects transgender individuals only to the extent that the alleged discrimination took the form of sex stereotyping is badly misreading the statute.[2]  *See* EEOC Br. at 1:23-25.

---

[1] Chandler opposed the EEOC's motion for leave to file the brief on August 24, 2016, and the Court has not yet ruled on that motion.  While Chandler continues to believe that the motion for leave should be denied, it is also responding to the EEOC on the merits now to complete the briefing record in the event the Court elects to review the EEOC's brief.

[2] The EEOC asserts that Chandler contends transgender individuals are not protected at all under Title VII. (EEOC Br. at 6:22-23 ("In moving to dismiss the complaint, Dignity Health takes the position that transgender individuals like Robinson are not covered by Title VII.").)  The EEOC misstates Chandler's position.  Chandler's motion plainly acknowledged that transgender individuals are protected from sex stereotyping under Title VII.  But Robinson does not make such a claim here.

Given the EEOC's laser-focused view, it is interesting to note that until 2012—23 years after the decision in *Price Waterhouse*—the EEOC emphatically took the *opposite* position. *See, e.g., Kowalczyk v. Brown*, 1994 WL 744529, at *2 (EEOC Dec. 27, 1994) ("Allegations of discrimination based on an individual's sexual identity disorder or discontent with their own sex is not synonymous with sex discrimination under Title VII. . . . The Commission finds that the agency correctly concluded that appellant's allegation of discrimination based on her acquired sex (transsexualism) is not a basis protected under Title VII . . . ."); *Campbell v. Espy*, 1994 WL 652840, at *1 n.3 (EEOC July 21, 1994) ("Appellant withdrew his claim of sex discrimination under Title VII as a basis for this action on appeal. As the previous decision correctly noted, courts and the Commission have previously held that gender dysphoria or transsexualism is not protected under Title VII under the aegis of sex discrimination.") (citations omitted). In *Macy*, the decision cited repeatedly in the EEOC's brief as authority for its current, and very different, view of the law, the EEOC specifically said that "[w]ith this decision, we expressly overturn, in light of the recent developments in the caselaw . . . , any contrary earlier decisions from the Commission." *Macy*, 2012 WL 1435995, at *11 n.16.[3] The text of Title VII has not changed since the EEOC agreed that gender dysphoria is "not protected under Title VII under the aegis of sex discrimination."

Just last year, the Second Circuit held that, because of the EEOC's prior staunch position that transgender status was *not* protected under Title VII, a transgender plaintiff who had failed to exhaust his administrative remedies before the EEOC might have a viable claim that exhaustion would have been futile. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 386 (2d Cir. 2015). Noting that "[w]hen an agency has previously 'taken a firm stand' against a plaintiff's position, the plaintiff's failure to exhaust administrative remedies may be excused on the ground that exhaustion would be futile[,]" the court pointed out that "[w]hen Fowlkes filed his 2011 complaint, the EEOC had developed a consistent body of decisions that did not recognize Title VII claims based on the complainant's transgender status." *Id.* Because Fowlkes' complaint pre-

---

[3] As discussed *infra*, the *Macy* decision was based only on sex stereotyping cases and is unsupported to the extent it recognizes a transgender status theory.

1  dated *Macy*, in which "the EEOC altered its position and concluded that discrimination against
2  transgender individuals based on their transgender status does constitute sex-based discrimination
3  in violation of Title VII[,]" the court held that "Fowlkes's failure to exhaust could potentially be
4  excused on the grounds that, in 2011, the EEOC had 'taken a firm stand' against recognizing his
5  Title VII discrimination claims." *Id.*[4]

6  The EEOC's brief does not argue that its present view is entitled to deference. But it is
7  still worth noting that the EEOC's recent 180-degree about-face on its position on transgender
8  status discrimination is a factor that would weigh against any deference afforded to the agency.
9  *See University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013)
10 ("The weight of deference afforded to agency interpretations under *Skidmore* depends upon 'the
11 thoroughness evident in its consideration, the validity of its reasoning, *its consistency with earlier*
12 *and later pronouncements*, and all those factors which give it power to persuade.'") (quoting
13 *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (emphasis added).[5] Applying this standard,
14 the court in *Union Pacific* found the EEOC's interpretation of the Pregnancy Discrimination Act
15 as extending to contraception to be "unpersuasive." Among other reasons, "the EEOC did not
16 issue any guidance on the issue of coverage of prescription contraception until 22 years after the
17 enactment of the PDA. The delay brings into question the consistency and persuasiveness of the
18 EEOC's position." *Union Pacific*, 479 F.3d at 943. The EEOC's 23-year delay after *Price*
19 *Waterhouse* to begin asserting that all transgender discrimination is sex stereotyping similarly
20 undermines the EEOC's position here.

---

[4] Similarly, the Department of Justice's official position on transgender discrimination has changed as of December 2014. *See* Office of the Attorney General, December 15, 2014 Memorandum (describing the "evol[ution] over time" of the federal government's position on whether Title VII governs transgender status discrimination and stating "the Department will *no longer* assert that Title VII's prohibition against discrimination based on sex does not encompass gender identity *per se* (including transgender discrimination)." https://www.justice.gov/file/188671/download (emphasis added).

[5] *Skidmore* deference would be the appropriate standard, had the EEOC argued for deference: "Since Congress did not give the EEOC rule-making authority, the amount of deference we give to this decision "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *In re Union Pacific Railroad Employment Practices Litig.*, 479 F.3d 936, 943 (8th Cir. 2007). However, where the views of the EEOC are "clearly wrong," the Court need not even decide the appropriate level of deference. *See General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 600 (2004).

## II. THE EEOC OMITS MENTION OF THE RECENT RULINGS REJECTING ITS VIEW

Among the numerous authorities cited in the EEOC's brief, one case is notably absent: *EEOC v. RG & GR Harris Funeral Homes, Inc.*, cited in Chandler's motion and reply. *Harris* is "one of the first two cases that the EEOC has ever brought on behalf of a transgender person." *EEOC v. RG & GR Harris Funeral Homes, Inc.*, __ F. Supp.3d__, 2016 WL 4396083, at *19 (E.D. Mich. Aug. 18, 2016) ("*Harris II*"); *see also* EEOC press release at https://www.eeoc.gov/eeoc/newsroom/release/9-25-14d.cfm.[6]  To Chandler's knowledge, *Harris* has produced the only two reported decisions in a transgender discrimination case brought by the EEOC.  It is telling that the EEOC failed to mention the very recent rulings in *Harris*, in which the court rejected the theory of transgender status discrimination that the EEOC's brief asserts is the definitive law of the United States.

In *Harris*, unlike here, the EEOC had chosen to pursue litigation in the capacity of a plaintiff on behalf of a transgender woman who was fired when she told her employer that she intended to begin presenting at work as a female.  In the employer's view, the employee's stated intention to wear dresses to work meant that she would not observe the employer's mandatory dress code requiring men to wear pants suits.

The EEOC's complaint in *Harris* asserted a cause of action alleging sex discrimination based on sex stereotyping as well as various other theories—itself an acknowledgement that discrimination based on transgender status is distinct from that based on stereotypes. *See EEOC v. RG & GR Harris Funeral Homes, Inc.*, 100 F. Supp. 3d 594, 598 (E.D. Mich. 2015) ("*Harris I*") (complaint alleged that "the Funeral Home's decision to fire Stephens was motivated by sex-based considerations, in that the Funeral Home fired Stephens because Stephens is transgender, because of Stephens's transition from male to female, and/or because Stephens did not conform to the Defendant Employer's sex- or gender-based preferences, expectations, or stereotypes").  The court found that the EEOC stated a claim—but *only* under a sex stereotyping theory.  Under a heading declaring "Transgender Status Is Not A Protected Class Under Title VII," *id.* at 598, the

---

[6] The other case, filed the same day, settled. *See* https://www.eeoc.gov/eeoc/newsroom/release/9-25-14e.cfm; https://www.eeoc.gov/eeoc/newsroom/release/4-13-15.cfm.

court squarely rejected the theory that the EEOC now asserts in Robinson's case. The court stated:

> If the EEOC's complaint had alleged that the Funeral Home fired Stephens based solely upon Stephens's status as a transgender person, then this Court would agree with the Funeral Home that the EEOC's complaint would fail to state a claim under Title VII. That is because, like sexual orientation, transgender or transsexual status is currently not a protected class under Title VII.

*Id.* (citations omitted). While acknowledging that the EEOC had alleged a cognizable stereotyping theory, the court added: "In its brief, . . . the EEOC appears to seek a more expansive interpretation of sex under Title VII that would include transgender persons as a protected class. . . . There is no Sixth Circuit or Supreme Court authority to support the EEOC's position that transgender status is a protected class under Title VII." *Id.* at 599.[7] Of course, there is no Ninth Circuit authority that would support this theory either. Despite the EEOC's and Robinson's attempt to classify *Schwenk v. Hartford*, 204 F.3d 1187, 1201-02 (9th Cir. 2000), as a transgender status case, it is plainly a stereotyping case, as the Ninth Circuit itself has characterized it. *See* Chandler's Reply at 7 (citing *Kastl v. Maricopa County Comm. College Dist.*, 325 Fed. Appx. 492, 493 (9th Cir. 2009); *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 874 (9th Cir. 2001); *Latta v. Otter*, 771 F.3d 456, 495 n.12 (9th Cir. 2014) (Berzon, J., concurring)).

Although its sex stereotyping allegations survived the defendant's motion to dismiss in *Harris*, the EEOC's case ultimately was dismissed, in a lengthy decision issued ***four days before*** the EEOC sought leave to appear in this case to urge its transgender status theory. In *Harris II*, the court found that the EEOC had presented direct evidence of discrimination under a stereotyping theory. However, the court also found that the employer was entitled to a defense under the Religious Freedom Restoration Act. Ultimately, the court granted summary judgment for the employer because the EEOC failed to show that burdening the funeral home's free exercise of religion by application of antidiscrimination law was the least restrictive means of furthering the government's purported interest of protecting Stephens from gender stereotyping.

[7] Thus, the *Harris* court did not view *Smith v. City of Salem, Ohio*, 378 F.3d 566 (6th Cir. 2004), as supporting a transgender status claim. It did, on the other hand, rely extensively on *Smith* to find a viable sex stereotyping claim. *See Harris I*, 100 F.Supp.3d at 599-603. However, the EEOC erroneously relies on *Smith* to support its transgender status theory. (EEOC Br. at 1:19-20, 6:6-7.) *See infra* Part IV.

*See Harris II*, 2016 WL 4396083 at *18. As the court explained, rather than attempting to protect employees from stereotyping (by, for example, challenging the dress code that required men to wear pants and women to wear skirts), the EEOC was actually promoting the employee's interest in expressing her gender identity in a way stereotypically associated with women. *See id.* at *20.

In reaching this result, the court reaffirmed that a transgender status claim is not viable. *See Harris II*, 2016 WL 4396083, at *20 & n.15 ("**Significantly, neither transgender status nor gender identity are protected classes under Title VII. . . . Congress can change that by amending Title VII. It is not this Court's role to create new protected classes under Title VII.**") (bold added). It also pointed out that the EEOC appeared to be disregarding that fact and was attempting to proceed on such a theory despite the court's prior ruling. *See id.* at *2 (noting the EEOC "has been proceeding as if gender identity or transgender status are protected classes under Title VII, taking the approach that the only acceptable solution would be for the Funeral Home to allow Stephens to wear a skirt-suit at work, in order to express Stephens's female gender identity"); *id.* at *19 ("As a practical matter, the EEOC likely did not [explore less restrictive solutions] because it has been proceeding as if gender identity or transgender status is a protected class under Title VII, taking the approach that the Funeral Home cannot prohibit Stephens from dressing as a female, in order to express her female gender identity.") (footnote omitted).

As the *Harris* rulings show, the EEOC's recent attempt to pursue its transgender status theory directly in federal court has been rejected, twice.

### III.  THE EEOC OMITS MENTION OF RECENT DEVELOPMENTS IN TRANSGENDER DISCRIMINATION CASES

The EEOC also fails to mention other recent and significant developments in the case law addressing transgender status discrimination. For instance, the EEOC cites *G.G. ex rel. Grimm v. Gloucester County School Board*, 822 F.3d 709 (4th Cir. 2016), in its effort to discount *Johnston v. University of Pittsburgh*, 97 F.Supp.3d 657 (W.D. Pa. 205), a case Chandler cited for several propositions, including that expansion of Title VII to encompass transgender status requires an act of Congress.[8] (EEOC Br. at 7 n.3.) The Fourth Circuit in *Grimm* found *Johnston* to be

---

[8] The EEOC points out that *Johnston*, as well as *Etsitty v. Utah Transit Authority*, 502 F.3d 1215, 1222 n.2 (10th Cir. 2007), involved sex-segregated facilities, which are not at issue in this case.

"unpersuasive" because it failed to address the Department of Education's interpretation of its regulation relating to sex-segregated facilities, 34 C.F.R. § 106.33.[9] *See Grimm*, 822 F.3d at 723 n.9. The EEOC neglects to mention, however, that the Fourth Circuit's decision was stayed by the U.S. Supreme Court on August 3, 2016, pending the filing of a petition for *certiorari*. *See Gloucester County School Board v. Grimm*, 136 S.Ct. 2442 (Aug. 3, 2016). "The Supreme Court takes such actions only on the rarest of occasions." *Texas v. United States*, __ F.Supp.3d__, 2016 WL 4426495, at *10 n.15 (N.D. Tex. Aug. 21, 2016). While the significance of this stay in terms of the Court's ultimate views on the subject of transgender discrimination remains to be seen, at a minimum the Supreme Court's willingness to issue a rare stay order indicates serious questions as to the viability of the Fourth Circuit's holding.[10]

      The EEOC also fails to mention that the day before the EEOC submitted its brief in this case, another federal court analyzed the same issue as *Grimm* and reached a diametrically opposite conclusion. In *Texas*, 2016 WL 4426495, the court issued a preliminary injunction enjoining certain federal agencies—including the EEOC—from enforcing recent federal guidelines requiring educational institutions to allow individuals to use the bathrooms and locker room facilities consistent with their gender identity. The court found that the guidelines conflicted with Title VII and Title IX, as well as with the Department of Education regulation, 34 C.F.R. § 106.33, which expressly allows schools to maintain such facilities separated by sex. *See Texas*, 2016 WL 4426495, at *14-*15. The court found that the statute and regulation were

---

(EEOC Br. at 7 n.3.) But these facilities cases do address whether transgender is a protected category—the same issue presented here. The fact that they are not from the Ninth Circuit also has no particular significance—neither are most of the cases cited by both parties and the EEOC.

[9] The *Grimm* majority held that 34 C.F.R. §106.33 was ambiguous in its application to transgender students, and thus it accorded deference to the Department's interpretation even though, as the dissent noted, the majority cited no authority other than the interpretation itself. *See Grimm*, 822 F.3d at 720-21; *id.* at 730 (Niemeyer, J., concurring in part and dissenting in part).

[10] On August 26, 2016, a district court within the Fourth Circuit found that plaintiff transgender students had shown a likelihood of success on the merits of their Title IX claim challenging a North Carolina law preventing schools from allowing access to sex-segregated facilities based on gender identity that did not match the sex on the person's birth certificate. The ruling was expressly based on the fact that, despite the Supreme Court's stay order, *Grimm* is controlling precedent in the Fourth Circuit. The court found plaintiffs had not shown a likelihood of success on their Equal Protection claim, and also declined to rule on whether transgender status is a suspect class or whether plaintiffs had shown sex stereotyping. *Carcano v. McCrory*, 2016 WL _____ (M.D.N.C. Aug. 26, 2016).

unambiguous, and that the agency's interpretation (which the court in *Grimm* gave "controlling weight," *Grimm*, 822 F.3d at 723) was entitled to "respect, but only to the extent it has the power to persuade." *Id.* at *15. Because the agency's interpretation was inconsistent with the regulation's plain language, it was contrary to law. *Id.*[11] As discussed below, the EEOC's position in this case also is unsupported by law.

## IV. THE EEOC'S VIEW IS UNSUPPORTED BY LAW

The EEOC's current view of the law, as expressed in its brief and in *Macy*, purports to be based *only* on *Price Waterhouse* and the cases that followed it.[12] (EEOC Br. at 1:15-23.) But as Chandler's motion and reply explained, *Price Waterhouse* can only support a sex stereotyping theory, and the overwhelming majority of the transgender cases following *Price Waterhouse* also involve a sex stereotyping theory. The EEOC's reliance on these cases for a broader transgender status theory therefore is unfounded. The EEOC knows this, so its argument attempts to eradicate any distinction by trying to force a transgender status theory into the sex stereotyping mold. (EEOC Br. at 4:19-21 ("Discrimination against an individual like Plaintiff based on the fact that, although assigned the female sex at birth, he fails to *act in the way expected* of a woman[,] constitutes discrimination on the basis of sex within the meaning of Title VII.") (emphasis added).)

Nothing about *Price Waterhouse* supports extending its holding or reasoning outside the stereotyping context. *See* Motion at 9:10-14:1; Reply at 5-10; EEOC Br. at 5:10 ("'*[i]n the specific context of sex stereotyping*, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender'") (quoting *Price Waterhouse*, 490 U.S. at 250; emphasis added). *Price Waterhouse* does not condone or provide a

---

[11] The court in *Carcano* acknowledged the ruling in *Texas* but deemed it of "no effect" to its own ruling because the *Carcano* court, unlike the *Texas* court, was bound by Fourth Circuit precedent and because the *Texas* ruling was issued after initiation of the *Carcano* lawsuit. *Carcano*, 2016 WL ____.

[12] The EEOC's brief largely repeats points already made by Robinson (thus putting the EEOC into an improper role for an amicus, *see Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982) (describing the "classic role of amicus curiae" as "assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration")). Chandler incorporates herein by reference the arguments made in its reply brief, responding to Robinson's opposition.

1  route to an open-ended prohibition on discrimination based on gender in any possible aspect.

2  The cases that the EEOC cites do not do that either. The EEOC asserts that Robinson's

3  view of the law is supported by *Schwenk*,[13] *Smith*,[14] and *Glenn v. Brumby*, 663 F.3d 1312, 1320

4  (11th Cir. 2011). (EEOC Br. at 1:17-20, 5:18-6:6.) The EEOC in *Macy* relied on these same

5  cases to attempt to expand *Price Waterhouse*, but, as Chandler has explained, these cases are *all*

6  *based on sex stereotyping*. (Motion at 10:3-11:1.) Here, the EEOC relies heavily on *Glenn*

7  (EEOC Br. at 9:20-26), but it is impossible to read the *Glenn* opinion without acknowledging that

8  it is purely and squarely based on sex stereotyping under *Price Waterhouse*. *See Glenn*, 663 F.3d

9  at 1317 (discussing cases and concluding that "[t]hese instances of discrimination against

10 plaintiffs because they fail to act according to socially prescribed gender roles constitute

11 discrimination under Title VII according to the rationale of *Price Waterhouse*"); *id.* ("District

12 courts have recognized as well that sex discrimination includes discrimination against transgender

13 persons because of their failure to comply with stereotypical gender norms."). While *Glenn* does

14 state that the fact of being transgender involves the violation of stereotypes, it made this statement

15 in the context of extending the *Price Waterhouse* rationale to cover transgender individuals under

16 a sex stereotyping theory, not in concluding that a transgender individual who cannot allege

17 stereotyping can pursue a Title VII discrimination claim under some other theory of sex

18 discrimination. *See id.* at 1316-17; *see also id.* at 1318-19 ("All persons, whether transgender or

19 not, are protected from discrimination on the basis of gender stereotypes. . . . An individual

20 cannot be punished because of his or her perceived gender-nonconformity. Because these

21 protections are afforded to everyone, they cannot be denied to a transgender individual.").[15]

---

[13] The EEOC says that "Defendant never mentions *Schwenk*." (EEOC Brief at 7:7-8.) As it is clear that Chandler mentioned and discussed *Schwenk*, Chandler assumes that the EEOC is merely saying that Chandler did not cite *Schwenk* in its specific discussion of how Congress must create any expansions of Title VII. Chandler did not cite *Schwenk* for that point because *Schwenk* is not relevant to that point.

[14] *See supra* n. 7 (discussing the ruling of a district court in the Sixth Circuit that no Sixth Circuit authority supports a transgender status discrimination theory but relying on *Smith* to rule that the plaintiff had alleged a sex stereotyping claim).

[15] As discussed in Chandler's Reply, in cases involving an employer's adverse action against a particular transgender individual arising from face-to-face interactions in the workplace, the lines between discrimination based on failure to conform to stereotypes and discrimination based on a negative reaction to the fact that the person is transgender may be blurry. (Reply at 10.) But in a case (as here) alleging a facially neutral benefits policy that applies to all persons and that was

In *Nassar*, the Court rejected the EEOC's interpretation of Title VII because its rationales "lack[ed] the persuasive force that is a necessary precondition to deference under *Skidmore*." *Nassar*, 133 S. Ct. at 2533. There, the EEOC failed to address the specific provisions of the statutory scheme and included only a "generic" discussion, which "calls the [EEOC's] conclusions into serious question." *Id.* at 2533-34. The EEOC's conclusions are similarly dubious here.

V. **THE EEOC'S POLICY ARGUMENTS ARE FOR CONGRESS, NOT COURTS**

As Chandler's motion and reply clearly explain, a court cannot read Title VII to protect a category that Congress has not acted to protect. It is an irrelevant response to this argument to point out, as the EEOC does, the self-evident fact that some of the cases cited by Chandler to support the need for congressional action involve cases of alleged sexual orientation discrimination. Although the basis for discrimination is different, the point is the same: congressional action is necessary to expand Title VII to cover an unenumerated category— regardless of whether that category is transgender status, sexual orientation, or anything else not already covered by Title VII.

The EEOC argues that courts have construed Title VII to cover various "subsets of individuals," but, as the EEOC itself acknowledges, these "subsets" are merely parts of categories already identified in the statute. (EEOC Br. at 7:12.) Similarly, the EEOC argues that Title VII is a remedial statute and must be construed liberally. (EEOC Br. at 7:10.) The Supreme Court has done so in certain cases. *See Price Waterhouse*, 490 U.S. 228 (reading Title VII's prohibition of discrimination because of sex to include sex stereotyping); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) (reading Title VII's prohibition of discrimination because of sex to include sexual harassment of men as well as women). But interpreting existing categories is a different exercise from adding new categories, as the EEOC and Robinson ask the Court to do here.

The EEOC believes that it is good policy to prohibit transgender status discrimination.

---

instituted long before the plaintiff became employed, the distinction is clear. Absent evidence of a discriminatory motive, as here, allegations challenging such a policy do not implicate discrimination based on stereotyping.

*See* EEOC Br. at 10:15-23.  But where a dispute concerns the reach of a statute, questions of policy are for Congress, not the courts.  That is precisely why numerous courts have held—albeit reluctantly—that Title VII does not apply to discrimination based on sexual orientation unless the allegations fit the stereotyping construct.  Those cases express strong views that sexual orientation *should* ideally be protected as a matter of policy, but recognize that the law as currently formulated does not support that protection, and that Congress would have to act to make such a change.  *See Hively v. Ivy Tech Comm. College*, __ F.3d __, 2016 WL 4039703, at *3 (7th Cir. July 28, 2016); *Christiansen v. Omnicom Group, Inc.*, __ F. Supp. 3d __, 2016 WL 951581, at *13-*14 (S.D.N.Y. March 9, 2016); *see also Harris II*, 2016 WL 4396083, at *20 & n.15 (in transgender context; "Significantly, neither transgender status nor gender identity are protected classes under Title VII. . . . Congress can change that by amending Title VII.  It is not this Court's role to create new protected classes under Title VII.").

Indeed, the EEOC's and Department of Justice's own recent reversals of position on transgender status as a protected category under Title VII underlines why such profound changes in the law must come from Congress, not from shifting statements of enforcement policy by agencies and government lawyers.

## VI. THE EEOC FAILS TO MEANINGFULLY ADDRESS CHANDLER'S NEUTRAL POLICY

Where a Title VII disparate treatment claim is based on an employer's *facially neutral* policy, as here, the claim fails if the plaintiff cannot show that the employer had an intent to discriminate against the plaintiff because of a protected characteristic.  *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).  Such motive cannot be inferred from the fact that the policy may impact a protected group, even if the employer was aware of that impact.  Robinson's Title VII claim cannot meet this standard.  As the motion and reply explain, the policy is neutral—on its face it does not single out the group in question, or any group—and Robinson did not allege any discriminatory motive.

The EEOC provides no help to Robinson in responding to these facts.  Like Robinson, the EEOC attempts to change the applicable legal rule by classifying the policy as facially

discriminatory rather than facially neutral, based on the contention that only transgender employees would want the coverage that is excluded by the plan. (EEOC Br. at 12:21-22 (arguing that no evidence of discriminatory motive is required where policy is facially discriminatory).) But Robinson has not pleaded or attempted to pursue a disparate impact claim, which would fail in any event for lack of a protected class. Like Robinson, the EEOC can only get past the failure to allege discriminatory motive by treating the policy as though it were facially discriminatory.

The EEOC disputes Chandler's point that there is no consensus as to the medical necessity of the procedures. Yet it does so only by pointing out that Centers for Medicare and Medicaid Services has not excluded coverage of the surgery entirely, but allows it on a case-by-case basis. (EEOC Br. at 13:6-9.) This very recent (2014) change reinforces the conclusion that the evidence on this subject is in flux.

Finally, the EEOC tries to find discriminatory motive, contending that the mere existence of Chandler's plan exclusion "strongly suggests" that it acted intentionally to discriminate. (EEOC Br. at 9:13-15.) The EEOC asserts that "[t]he fact of the exclusion indicates that in Dignity Health's view, employees should not be attempting to 'surgically transform' themselves sexually. If employees nevertheless obtain the treatment, Defendant certainly will not pay for it." (*Id.* at 9:16-19.) Not even Robinson has alleged or asserted this interpretation of Chandler's motive. There are nondiscriminatory reasons for excluding this treatment, including, as discussed in the motion to dismiss, the serious questions that have been raised about its medical necessity.

There is no basis to "infer" Chandler's discomfort with "employees' gender non-conformity and the 'sheer fact of the transition.'" (EEOC Br. at 9:26-28.) To the contrary, Robinson has made no allegation that he has suffered any adverse treatment when he comes to work and he presents as a valued male employee in good standing. He has not kept his transition a secret from his employer and has suffered no repercussions. The EEOC wants to use the policy exclusion to infer that Chandler is uncomfortable with gender non-conformity, when the allegations (and evidence) are to the contrary.

## VII. CONCLUSION

The EEOC's brief provides no authoritative or even logical support for the views of transgender discrimination that it currently espouses. It certainly provides no basis for the Court to do anything other than dismiss Robinson's Title VII claim.

MANATT, PHELPS & PHILLIPS

Dated: August 29, 2016

By: /s/ Barry S. Landsberg
  Barry S. Landsberg
  *Attorneys for Defendant*
  DIGNITY HEALTH dba CHANDLER REGIONAL MEDICAL CENTER

317520851.1